GEORGE L. BECKER,

*vs.*

MADISON SWEETZER.

When an executory agreement between the parties is the consideration of a contract which forms the basis of an action between them, such executory agreement must be pleaded, and performance averred, and such allegations are material and traversable.

When in an action upon a contract the answer denies the contract as

alleged in the complaint, except as afterwards admitted in the answer and sets up a contract materially and substantially different from, and which would not, under the pleadings, support the contract stated in the complaint, a substantial issue is formed upon the terms of the contract.

When the allegations of a complaint as to the consideration of a contract sued on are traversable and in issue, and no proof tending to establish the same is offered, the action may be dismissed. .

When an action is brought upon a contract, the consideration of which is substantial, meritorious and material services to be performed by the plaintiff for the defendant about a certain subject matter, the performance of which services is averred .in the complaint, and the answer sets up a contract different from that in the complaint, although about the same subject matter, and admits the performance of nominal services by the plaintiff under the contract in the answer, and denies all services set up in the complaint, the performance of the services alleged in the complaint must be proved.

An assignment by defendant to plaintiff of a portion of certain claims held and owned by the defendant on and before the 8th of December, 1860, and then existing in favor of the defendant, for goods, wares and merchandize sold and delivered by the defendant to certain Indians of the Sioux or Dakotah tribe, which were still to be examined, allowed and affirmed by the United States under the provisions of the treaty between the United States and Sisseton and Wahpaton bands of the Dakotah or Sioux tribe of Indians, concluded in Washington June 19, 1858, ratified by the Senate March 9th, 1859, is void under the act of Congress entitled "An act to prevent frauds upon the Treasury of the United States," approved February 26, 1853.

This action was commenced in the court of common pleas, Ramsey county. The material allegations of the complaint are substantially as follows : that on or about December 8, 1860, the defendant made and entered into a certain contract with the plaintiff, whereby the said defendant retained and engaged said plaintiff as an attorney and counsellor at law, in and about investigating, and endeavoring to collect from the United States certain claims which said defendant, on and before that time, had and owned, for ' certain goods, wares and merchandise, before them sold and delivered by

Becker v. Sweetzer.

said defendant to certain Indians of the Sioux or Dacotah tribe, of the value of about twenty-four thousand dollars, and which claims were being investigated by the United States, and for the paying off of which, so far as the same should be allowed and approved by the United States, provision had been made; and in consideration of one dollar to him in hand paid by said plaintiff, and in consideration that said plaintiff would aid and assist said defendant therein, and for an adequate and valuable consideration to him moving, the said defendant promised and agreed to allow and pay unto said plaintiff, as his compensation therefor, and the said defendant did then and there transfer, assign and set over unto said plaintiff, one equal undivided one-fifth part of said claims, or of so much thereof as should be allowed to said defendant, and appointed said plaintiff his true and lawful attorney, to demand and receive the same in his name, for the use and benefit of said plaintiff; that said plaintiff did thereupon, under and pursuant to said contract, aid and assist said defendant therein, and did and performed every act and thing by him to be done and performed under said contract; that thereafter the United States allowed to said defendant, of said claims, the sum of sixteen thousand seven hundred and forty-seven, and twenty-three one hundredth dollars, on or about August 31, 1861, and then paid the same to defendant, who then and there had and received from the United States to the use of said plaintiff, the one-fifth part thereof; that plaintiff has demanded payment of the same, which was refused.

The defendant's answer denies each and every allegation, matter and thing, contained in the complaint, as to the agreement and the assignment, except as therein admitted and stated, and alleges, substantially, that prior to the year 1860, the defendant had been engaged in trading with

certain bands of Indians of the Sioux or Dacotah tribe, and that said Indians had become, and were justly indebted to him in the sum of twenty-four thousand dollars, or thereabouts, for goods sold and delivered to them; that in like manner said Indians were indebted to other persons in large sums of money; that prior to December, 1860, a treaty had been made and entered into between said Indians and the government of the United States, and certain action had been had by the Congress and Senate of the United States, by and pursuant to which provision was made for the payment, to a certain limited extent, of the said indebtedness of said Indians to the defendant, and the other traders, and thereupon an investigation had been ordered by the Indian Bureau, to be had before Wm. J. Cullen, Esq., then superintendent of Indian affairs, for the purpose of ascertaining the amount of the said indebtedness of said Indians to the defendant, and the several traders respectively, for the payment of which by the United States provision had been made as aforesaid; that shortly prior to the investigation of said claim before the said commissioner of Indian affairs, and in the month of December, 1860, the plaintiff applied o the defendant to be employed as his attorney, in the investigation and collection from the United States, of his said claim, upon the terms of receiving as compensation therefor one-fifth part of the amount that should be collected from the United States thereon, through the provision made for the payment thereof, as aforesaid; that the defendant declined to employ the plaintiff upon such terms; whereupon the plaintiff represented to the defendant, that he desired to be employed by all the other traders, as their attorney, upon the terms aforesaid, and that in order to enable him to obtain such employment, he wished to have the prior example of the defendant in so employing him; and that thereupon,

Becker v. Sweetzer.

the defendant being willing to assist and aid the plaintiff in the prosecution of said plans, agreed with the plaintiff, that he might and should, nominally, represent the defendant as his attorney in the said investigation, and collection of his said claims, but that he should not be entitled to, or receive any compensation therefor, except that if one-fifth part of the amount which should be collected from the United States on the defendant's said claims, by reason of the provision so made for the payment thereof, should exceed the sum of four thousand dollars, he should be entitled to receive from the defendant, an amount equal to such excess, and no more; and that in pursuance of such agreement, and not otherwise, the said plaintiff did, nominally, represent the defendant as his attorney in the premises.

Further answering, the defendant denies that the plaintiff aided or assisted him in any manner, in the business of the investigation, or collection of his said claims, and denies that the plaintiff ever performed or rendered any services for him in the premises, as alleged in the complaint or otherwise.

The answer admits that there was allowed and paid defendant by the United States, on account of his said claims, the sum of sixteen thousand seven hundred and forty-seven dollars and twenty-three cents, on or prior to the 31st day of August, 1861.

There were allegations in the complaint, and allegations, admissions and denials in the answer, with regard to the statute of limitations, which, as the matter is not discussed in the opinion of the court, it is unnecessary to state.

The cause was brought to trial before a jury. The plaintiff testified that a certain instrument, which he said contained the contract between him and defendant, was executed by the defendant, in his presence. The instrument was then offered in evidence. The defendant objected on the ground

that it was incompetent, irrelevant and immaterial. The court overruled the objections, defendant excepted, and the instrument was received in evidence, and is in the words and figures following:

"Whereas, I, Madison Sweetzer, of Fort Wayne, Indiana, have just and legal claims against various Indians of the Sioux or Dakota tribe, for goods sold since the treaty of 1851, and prior to that date, which said claims are now being investigated by order of the Indian Bureau, and which amount, in the aggregate, to twenty-four thousand dollars, or thereabouts, now, therefore, in consideration of one dollar to me in hand, paid by George L. Becker, of St. Paul, Minnesota, the receipt whereof, I do hereby acknowledge, I do by these presents, sell, assign, transfer and set over to the said George L. Becker, and to his heirs and assigns, one equal undivided fifth part of my said claims, or so much thereof as may be allowed to me, to his own use and benefit, hereby constituting and appointing the said George L. Becker, my true and lawful attorney, for me, and in my name, place and stead, for the purpose aforesaid, to ask, demand, recover and receive twenty per cent., or one fifth part of the accounts, dues, debts and demands hereinbefore referred to, giving and granting unto my said attorney, full power and authority to do and perform all and every act and thing, whatsoever, requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do by virtue hereof. In witness whereof I have hereunto set my hand and seal this 8th day of December, A. D. 1860.          [SEAL]          M. SWEETZER. Signed, sealed and deliverd in presence of

WM. F. WHEELER."

The instrument was duly acknowledged before William F. Wheeler, Notary Public.

The plaintiff further testified as to the time he spent in Washington, and then rested his case: whereupon the defendant moved to dismiss the action, because the plaintiff had not proved the cause of action alleged in the complaint. The court granted the motion and defendant excepted.

The plaintiff moved the court upon a case settled, to vacate the order dismissing the action, which motion was denied, and the plaintiff appeals from the order denying the same to this court.

Lampreys, for Appellant.

Bigelow & Clark, for Respondent.

*By the Court*—McMillan, J.—The agreement between the parties is the consideration of the assignment set up in the complaint; it is an executory agreement, and must be pleaded, and performance averred; all which allegations are material and traversable. 1 *Ch. Pl.* 296.

The answer denies each and every allegation as to the assignment and the agreement which is the consideration of it, except as therein afterwards admitted. The answer admits, that in order to enable plaintiff to obtain employment from other persons having similar claims, the defendant agreed with plaintiff, at the request of the latter, that the plaintiff might, and should, nominally, represent the defendant, as his attorney in the investigation and collection of his claims, but that he should not be entitled to or receive any compensation therefor, except, that if one-fifth part of the amount which should be collected from the United States, as the defendant's claims, by reason of the provision

so made for the payment thereof, as in the answer stated, should exceed the sum of four thousand dollars, the plaintiff should be entitled to receive from the defendant an amount equal to such excess, and no more, and that in pursuance of said agreement, and not otherwise, the said plaintiff did nominally represent this defendant as his attorney in the premises.

The terms of the contract set up in the answer are materially different from those in the complaint, and would not, under the allegations of the complaint, support the assignment, and, as we have stated, the contract in any other terms than as alleged in the answer is denied, we think, therefore, there was a substantial issue upon the terms of the contract.

The assignment does not purport to state the contract which by the allegations of the complaint forms an essential part of the consideration. The allegations as to the consideration, being traversable, and in issue, must be proved; and as no proof tending to establish them was offered, the action was properly dismissed.

The performance of the services should also have been proved. The answer admits, that under the contract set up by the defendant, the plaintiff did, nominally, represent the defendant as attorney in the premises, but denies all the services alleged in the complaint. The services alleged in the complaint are those required under the contract therein stated, and are substantial, meritorious and material services; the services admitted in the answer, are nominal, that is, in name only, without material or substantial benefit, and rendered under the contract set up in the answer; all other services alleged in the complaint are denied. Assuming that the services admitted must be taken generally as an admission of services about the subject matter of both

contracts; yet proof of nominal services under the contract alleged in the complaint, would not be proof of performance by the plaintiff of his part of the contract which would entitle him to recover.

Although the assignment is absolute in its terms, and the defendant subsequently received the money which by the terms of the assignment was transferred to the plaintiff, yet the action being in the nature of an action for money had and received to the use of the plaintiff, if the assignment is void by reason of a failure of consideration, the plaintiff can not recover. No evidence tending to prove the performance of the contract by the plaintiff having been offered, was a further ground for dismissing the action.

It is claimed by the defendant, further, that the contract and assignment themselves are void under the first section of the act of Congress of February 26th, 1853—*U. S. Stats. at Large, vol.* 10, *p.* 170—which declares that "All transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

If the claims of the defendant, for the collection of which the alleged contract was made between these parties, are claims upon the United States within the meaning of the act of Congress referred to, then the contract and assignment are doubtless void.

The accounts for the collection of which the plaintiff was employed, as alleged in the complaint, were accounts "had and owned by defendant, on and before the 8th of December, 1860, and which were then and there existing in favor of said defendant, for certain goods, wares and merchandize, then before sold, furnished and delivered by said defendant to certain Indians of the Sioux or Dakotah tribe, and which were then and there worth, and of the value of about twenty-four thousand dollars, and which claims and demands were then being investigated by the United States, and for the paying off of which, so far as the same should be allowed and approved by the United States, provision had then been made."

There is nothing in the sale of goods, wares and merchandize by the defendant to the Sioux Indians, which in itself would create any claim upon the United States. The treaty stipulation therefor affecting this claim must be referred to in order to determine the existence, or non-existence of such claim.

By section 2 of the treaty between the United States and the Sisseton and Wahpaton bands of the Dacotah or Sioux tribe of Indians, concluded in Washington on June 19, 1858, ratified by the Senate March 9, 1859, it is stipulated, that the question, whether the Indians have a title to certain lands as a reservation for their future occupancy and home, shall be submitted to the decision of the Senate, and if they have, what compensation shall be made to them for the portion of the reservation specified in the treaty; whether they shall be allowed a specified sum of money therefor, and if so how much, or whether the same shall be sold for their benefit, they to receive the proceeds of such sale, deducting the necessary expenses incident thereto. "Such sale, if decided in favor of by the Senate, shall be

Becker v. Sweetzer.

made under and according to regulations to be prescribed by the Secretary of the Interior, and in such manner as will secure to them the largest sum it may be practicable to obtain for said land. "

Section 3 is as follows: "It is also agreed if the Senate shall authorize the land designated in Article two of this agreement to be sold for the benefit of the said Sisseton and Wahpaton bands, or shall prescribe an amount to be paid to said band for their interest in said tract, provision shall be made by which the chiefs and head men of said bands, may in their discretion in open council authorize to be paid out of the proceeds of said tract, such sum or sums as may be found necessary and proper, not exceeding seventy thousand dollars, to satisfy their just debts and obligations, and to provide goods to be taken by said chiefs and head men to the said bands on their return: *Provided*, however, that their said determination shall be approved by the Superintendent of Indian Affairs for the Northern Superintendency, for the time being, and the said payments be authorized by the Secretary of the Interior." *U. S. Stat. at Large, vol.* 12, *pp.* 1038-9.

The counsel for the respective parties, throughout their arguments, assume as a fact, that "the chiefs and head men" of the Indian bands, in open counsel, authorized the claims of the defendant Sweetzer, which are the subject of the assignment, to be paid in pursuance of and in accordance with the provisions of the treaty referred to.

We proceed therefore, in the determination of this case, upon the assumption, that so far as this fact is concerned, whether as a matter of *pleading*, or *proof*, it sufficiently appears upon the record before us.

It seems to us, then, that the claims of the defendant referred to in the pleadings, were originally claims against

the Indians. But the relation of the United States to the Indians within our boundaries is peculiar; while for treaty purposes they are *quasi* independent, yet for many purposes they are the wards of the government, and are under its protection and care, and all the trusts and obligations growing out of this fiduciary relation rest upon the government. This relation, and these duties and obligations, which under some circumstances exist in the absence of any treaty stipulation, is we think recognized in the treaty referred to. The duty of securing the largest sum practicable to the Indians for the lands, is clearly expressed in the last clause of the second section; and the terms of the third section of the treaty, by which it is stipulated, that the amounts to be paid in liquidation of the just debts of the Indians, and for goods taken by the chiefs and head men to the bands on their return from Washington, although allowed by the chiefs and head men of these bands in open counsel, should not be paid without the approval of the superintendent of Indian affairs of the northern superintendency, and the authority of the Secretary of the Interior, clearly create a trust, and establish a relation between the United States and these Indians, which is altogether inconsistent with their being independent equal sovereignties, and can only be explained by construing the treaty in the light of the relation actually existing between the parties, viz: guardian and wards *sub modo*, and as a recognition in terms of these relations, and an assumption by the United States of all the obligations and responsibilities springing therefrom. It is also clear, we think, that the government assumed to pay such claims against the Indians, as should be allowed in accordance with its terms, to the proper owner and holder thereof; the amounts allowed to these creditors of the Indians, therefore, were under the treaty, direct claims against the United States, and so

Becker v. Sweetzer.

far as that is concerned, within the letter of the prohibitory act. But it may be said that they are not within its spirit, because the act is evidently intended to prevent frauds upon the treasury of the United States, and the liability of the government is limited by the treaty, and the amount paid by the government, to the extent of this limitation, is a payment under the treaty : the government therefore cannot be defrauded. To this the answer is, the government is to approve the allowance of the claims, and authorize their payment to the owners : if we are correct in our view of the relation existing between the United States and the Indians, the highest obligation rests upon the former to exercise good faith in the allowance and payment of the claims, and to protect in every manner the interest of the Indians. In the examination of these claims, in order to approve the determination of the council, and authorize payment of the claims, every opportunity for the commission of fraud would present itself, which exists in regard to any other claim upon the government, and although the just debts, obligations and liabilities contemplated by the treaty may fall far below the maximum amount limited by its terms, yet the claims may through fraud be made to absorb the entire amount specified. Whether in any case the government would suffer direct pecuniary loss or injury by such fraud, we need not now consider; the claim as we have endeavored to show is one upon the United States, and if the fraud may not work pecuniary injury to the government, it certainly may to the Indians, the wards of the government, whose protection in this instance is imposed by an obligation, as high, if not higher in its nature, than that to protect the treasury. The interest of the Indians and the government are in this instance identical; the fraud producing pecuniary loss to the Indians is a violation of the rights of the government in

its relation as guardian of the Indians, and assails not only the integrity of the government, but the safety of her citizens. It is therefore an injury to the government more serious than a pecuniary loss.

We are of opinion that the assignment offered in evidence is void under the Act of Congress referred to, and the action for this reason was properly dismissed.

As this disposes fully of the cause of action, we need not consider the further question presented as to the statute of limitations.